## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| SONNY DESPOSITO, | Civil Action No. 14-1641 |
| Plaintiff, | |
| v. | |
| STATE OF NEW JERSEY, et al., | |
| | OPINION |
| Defendants. | |

**ARLEO, United States District Judge:**

### I.      INTRODUCTION

Plaintiff Sonny Desposito, a prisoner currently confined at Federal Correctional Institution, Miami, Florida, seeks to bring this action *in forma pauperis* Based on his affidavit of indigence, the Court will grant Plaintiff's application to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915(a) and order the Clerk of the Court to file the complaint.[1]

At this time, the Court must review the Amended Complaint, pursuant to 28 U.S.C. §§

---

[1] Plaintiff has also filed a motion seeking the return of the $400.00 filing fee, which was paid on Plaintiff's behalf by William Desposito after his first application to proceed *in forma pauperis* was denied without prejudice for failing to submit a complete application.  (Nos. 2-3.)  Plaintiff's application states that he believed he needed to pay the filing fee to prevent expiration of the statute of limitations on his claims.  (No. 12.)  The Court grants that motion and will direct the Clerk to refund the fee to William Desposito using the address on file.  The Court notes, however, that at the time the Court denied Plaintiff's application for *in forma pauperis* status, the Court advised Plaintiff that the administrative termination was not a dismissal for purposes of the statute of limitations and, if reopened, would not be subject to the statute of limitations bar if originally timely filed. (*See* No. 2.)

1915(e)(2) and 1915A to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.  For the reasons set forth below, the Court concludes that the Amended Complaint should be dismissed in part, and Plaintiff will be granted leave to file another amended complaint to cure the deficiencies described herein.

## II.    FACTUAL BACKGROUND

Plaintiff filed the instant Complaint pursuant to 28 U.S.C. § 1983 on March 14, 2014, and his signed Complaint is dated February 18, 2014.[2]  (No. 1 at 60.)  On August 8, 2014, Plaintiff filed a 60-page Amended Complaint naming 28 individuals and entities as Defendants in the instant action.  The Amended Complaint offers a stream of consciousness account of numerous alleged wrongs perpetrated against Plaintiff by various state actors and private parties over a period of ten years.  The gravamen of Plaintiff's Amended Complaint, however, appears to be that the named Defendants conspired to arrest, imprison, charge, and prosecute Plaintiff for a robbery that occurred on April 20, 2008 and for which he was ultimately acquitted in March 2012 following a jury trial.  Plaintiff contends that he was framed for the 2008 robbery and that the named individual Defendants in the Bergen County Prosecutor's Office, the Westwood Police Department, and the Bergen County Sheriff's Department fabricated evidence against him, created an impermissibly suggestive photo array, and coerced witnesses to identify him as the perpetrator of the robbery.  Plaintiff further contends that the State's key witnesses, the judge that presided over his trial, and his both his retained and court-appointed attorneys also participated in the conspiracy to wrongly convict him of the 2008 robbery.

_____

[2] For purposes of this screening opinion and pursuant to the prisoner mailbox rule, the Court will use the latter date to calculate the applicable limitations period.

Plaintiff traces the conspiracy to convict him of the 2008 robbery to a vendetta on the part of the Westwood Police Department and officers. (Am. Compl. at 12-23.) Plaintiff contends that this vendetta against him and his family dates back to 2002. He also recounts details of a separate incident in the 2008 timeframe in which Westwood Police brought charges against Plaintiff's brother. (*Id.* at 12-13.) Plaintiff has sued Officer Michael Pontillo, Sergeant Robert Held, Detective Robert Saul, Jr., Sergeant Gerard Fortunat, Sergeant Hucheson and Police Chief Frank Regina, all of the Westwood Police Department. Plaintiff contends that the Westwood Police Department's longstanding vendetta against him and his family amounted to an unofficial policy within the department and that Chief Frank Regina is responsible for the conduct of his subordinates. (Am. Compl. at 50.)

Plaintiff's Amended Complaint also details several incidents in which he was mistreated by members of the Westwood Police Department and sheriffs at the Bergen County Jail while in custody in connection with the 2008 robbery. While in Westwood police custody in early 2008[3], Plaintiff also alleges he was mistreated by the officers and that the Chief Frank Regina was both aware of this conduct and participated in it. (Am. Compl. at 15-16.) While incarcerated at Bergen County Jail as a pretrial detainee beginning on April 24, 2008, Plaintiff alleges that he was likewise mistreated by the Bergen County Sheriffs. (Am. Compl. at 23.) Plaintiff contends that the Bergen County Sheriff also executed a search warrant on Plaintiff's residence in June of 2009, and the officers conducting the search allegedly destroyed his property and stole valuable items from him. (Am. Compl. at 24.)

---

[3] It is unclear from the Amended Complaint whether Plaintiff was held pursuant to the 2008 robbery charges or pursuant to another charge.

3

Plaintiff additionally alleges that "[t]wo unknown Berger [sic] County sheriffs threatened [his] life [on] 3-14-12 in the Hackensack Superior Court House in N.J." (See Am. Compl. at 53.) This threat allegedly occurred on the first day of his trial on the robbery charges. (See *id.* at 26.) Plaintiff contends that the sheriffs allegedly told him if he did not "plead guilty, we are going to kill you in the cell." (*Id.*)  Plaintiff further alleges that one of the sheriffs told Plaintiff "not to voice constitutional issues." *Id.* at 53.

After Plaintiff was acquitted on March 27, 2012, the sheriffs at the Bergen County jail allegedly punished Plaintiff and another man by locking them in their shared cell without running water or a working toilet. (*Id.* at 24, 54.)  The toilet backed up, and despite the unbearable smell, the sheriffs refused to permit Plaintiff or his cellmate to change cells or use the bathroom elsewhere. (*Id.* at 24.)

Plaintiff has also alleged a number of "separate but related claim[s]." (*Id.* at 30.)  Under this category, Plaintiff has sued the judge that presided over his trial, alleging that the Honorable Donald R. Venezia participated in the conspiracy to falsely imprison Plaintiff and citing to Judge Venezia's pretrial and trial rulings as evidence of that alleged participation. (Am. Compl. at 31-32.)

Plaintiff has also sued the Defendant Joshua T. Buckner, his attorney that represented him in pretrial proceedings, for telling Plaintiff's family in 2008 that Plaintiff was guilty of the 2008 robbery, for refusing to file various motions on Plaintiff's behalf, for depleting Plaintiff's $12,000 retainer, and seeking to withdrawal from the case before trial. (Am. Compl. at 58.) Plaintiff alleges that Buckner participated in the conspiracy to convict him of the 2008 robbery by telling Plaintiff that needed to cut off his dreadlocks, which was the very feature that allegedly distinguished Plaintiff from actual perpetrator and the feature that Plaintiff believed

proved his innocence. (*Id.* at 33.)  Plaintiff has also sued Buckner's firm, Sunshine, Atkin, Minassian, Tafuri & D'Amato, P.A., alleging that the named partners are responsible for the conduct of Buckner. (*Id.* at 56).

Plaintiff has also sued the Office of the Public Defender in Bergen County, Louis Acevedo, and James Gizzi.  Plaintiff contends that the Office of the Public Defender has waged "financial warfare" on him and reported him to various collection agencies.  (Am. Compl. at 37-42.)  Acevedo likewise reported Plaintiff to collection agencies and told him he would need to pay for his right to counsel.  Plaintiff alleges the Gizzi, who appears to have represented him at trial, "acted as a government mole, sabotaging [Plaintiff's] defense from the inside." (Am. Compl. 39.)  He contends that Gizzi sabotaged his defense by refusing to investigate the robbery, refused to obtain police reports, videos, and pictures that would have exculpated him, and refused to secure travel and accommodation for Plaintiff's out-of-state witnesses. (*Id.*)

Finally, Plaintiff contends that a Bergen County Sheriff "Darri E. Dewitt defamed [sic] my character in front of witnesses at the corners of Tiffany Avenue along River Vale Road in N.J. on October 7, 2013." (Am. Compl. at 55; *see also id.* at 26.)  At the relevant time, Dewitt was Plaintiff's father's neighbor. (*Id.* at 26.)  According to Plaintiff, Dewitt became angry after a tree from Plaintiff's father's yard fell in Dewitt's yard, and Dewitt allegedly told Plaintiff's father, in front of witnesses, that he had arrested Plaintiff, a fact that Plaintiff disputes. (*Id.* at 26-27.)

Plaintiff alleges that he has suffered emotional distress and post-traumatic stress disorder or PTSD as a result of the Defendants' wrongdoing and seeks varying amounts of damages from all Defendants.  In addition, he seeks equitable relief from witnesses Betty Masariggo, Jennifer Rose Rothenhousen, and David Potter. (Am. Compl. at 60.)

## III.   ANALYSIS

### A. Application for Default Judgment

On November 6, 2014, Plaintiff wrote to the Court "request[ing] the Court to issue default Judgment against all Defendants" because Defendants failed to respond to the summons issued by the Court on August 7, 2014.  (No. 9.)   In his application, Plaintiff does not indicate whether he served the summons on any of the Defendants.

Entry of default and default judgment are governed by Federal Rule of Civil Procedure 55.  Entry of default judgment is a two-step process.  *See* Fed. R. Civ. P. 55(a), (b).  A party seeking to obtain a default judgment must first request that the Clerk of the Court "enter ... the default" of the party that has not answered the pleading or "otherwise defend[ed]," within the time required by the rules or as extended by court order.  Fed. R. Civ. P. 55(a).[4]  After a default is entered against a party, the court may, pursuant to Fed. R. Civ. P. 55(b)(2), enter a default judgment against a party who has failed to plead or otherwise defend.  *See Limehouse v. Delaware*, 144 F. App'x 921, 923 (3d Cir. 2005) ("[T]he District Court properly denied the motion because Limehouse failed to obtain entry of default prior to seeking a default judgment.").

---

[4] "An entry of default is a purely ministerial act carried out by a court clerk on request in cases in which a defendant has 'failed to plead or otherwise defend,'" *Sourcecorp Inc. v. Croney*, 412 Fed.Appx. 455, 457 (3d Cir. 2011) (quoting Fed.R.Civ.P. 55(a)), and is not the same as a default judgment. *Joe Hand Promotions, Inc. v. Yakubets*, 3 F.Supp.3d 261, 270, n. 5, No. 12-4583, 2014 WL 960787, at *4 n. 5 (E.D. Pa. Mar. 11, 2014).

Even where a Plaintiff seeks entry of default prior to seeking default judgment, the entry of default will be set aside when the Complaint has not been properly served. *See Gold Kist, Inc. v. Laurinburg Oil Co.*, 756 F.2d 14, 19 (3d Cir. 1985); *Grand Entm't Group, Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 493 (3d Cir. 1993) (holding that a default will be set aside if it was not properly entered). Pursuant to Federal Rule of Civil Procedure 4, the Clerk of the Court must issue a summons as to the defendant and the plaintiff must then serve the summons with a copy of the complaint on the defendant. Plaintiffs bear the burden of proving sufficient service of process, and when a plaintiff fails to properly serve a defendant with a summons and a complaint in accordance with Rule 4, a default cannot stand and must be vacated. *See Grand Entm't Group*, 988 F.2d 476 at 493; *In re Forrest*, 403 F. App'x 768 (3d Cir.2010) (district court is not required to order the United States Marshals Service to serve a complaint filed by an inmate proceeding *in forma pauperis* under Fed. R. Civ. P. 4(c)(3) until it had first screened the case pursuant to 28 U.S.C. § 1915A).

Here, the Court construes Plaintiff's application as a motion for default judgment and denies that motion because he did not first seek entry of default and has not indicated that he effected service on any of the Defendants.

### B. Standard for *Sua Sponte* Dismissal

The Prison Litigation Reform Act ("PLRA"), Pub.L. No. 104–134, §§ 801–810, 110 Stat. 1321–66 to 1321–77 (April 26, 1996), requires a district court to review a complaint in a civil action in which a prisoner is proceeding *in forma pauperis* or seeks redress against a governmental employee or entity. The Court is required to identify cognizable claims and to *sua sponte* dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C.

§§ 1915(e)(2)(B) and 1915A. This action is subject to *sua sponte* screening for dismissal under both 28 U.S.C. § 1915(e)(2)(B) and § 1915A.

"The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir.2012) (per curiam) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir.2000)); *Mitchell v. Beard*, 492 F. App'x 230, 232 (3d Cir.2012) (per curiam) (discussing 28 U.S.C. § 1997e(c)(1)); *Courteau v. United States*, 287 F. App'x 159, 162 (3d Cir.2008) (discussing 28 U.S.C. § 1915A(b)).

Under Fed. R. Civ. P. 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fleisher v. Standard Ins. Co.*, 679 F.3d 116, 120 (3d Cir.2012). The complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Allegations that are no more than legal conclusions are not entitled to the same assumption of truth. *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir.2012). To determine if a complaint meets the pleading standard, the Court must strip away conclusory statements and "look for well-pled factual allegations, assume their veracity, and then determine whether they plausibly give rise to an entitlement of relief." *Id.* (internal quotation marks omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

A complaint filed by a pro se litigant is to be liberally construed and held to a less stringent standard than formal complaints drafted by a lawyer. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)). Nevertheless, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 10–4710, 2013 WL 57895 at *4 (3d Cir. Jan. 7, 2013).

### C. The "Short Plain Statement" Requirement of Rule 8

Before assessing the substance of Plaintiff's Amended Complaint, the Court addresses the stream of consciousness styling of Plaintiff's pleading. Pursuant to the Federal Rules of Civil Procedure, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint may generally be dismissed for violating Rule 8 if it is also so rambling, unclear, or complicated so as to defy response. *See, e.g., In re Westinghouse Sec. Litig.*, 90 F.3d 696, 703 (3d Cir. 1996) ("The second amended complaint is unnecessarily complicated and verbose."). In this regard, the Court notes that the meandering nature of Plaintiff's amended complaint, its overlapping and confusing discussions of Defendants and issues, and the inclusion of unrelated issues and digressions has made it extremely difficult to construe his Amended Complaint. Going forward, the Court directs Plaintiff to adhere to the mandate of Rule 8 and provide "a short and plain" statement of his claim or claims.

### D. Section 1983 Claims Against Immune or Non-Entities

From the outset, Plaintiff has sued a number of entities and individuals that must be dismissed because they are immune or otherwise not amenable to suit under § 1983.

### 1. State of New Jersey

Plaintiff has sued the State of New Jersey contending that it "allowed the Bergen County Prosecutor's Office to maliciously prosecute (Plaintiff) following the 2008 robbery in Westwood, New Jersey." (Am. Compl. at 45.) The State of New Jersey, however, is not amenable to suit under § 1983. It is well-established that States are not "persons" within the meaning of § 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). Further, Eleventh Amendment immunity "protects both states and state agencies 'as long as the state is the real party in interest.'" *Woodyard v. County of Essex*, 514 Fed. App'x 177, 182 (3d Cir. Mar. 5, 2013) (quoting *Fitchik v. N.J. Transit Rail Operations*, 873 F.2d 655, 659 (3d Cir. 1989) (*en banc*)). As such, Plaintiff's claims against the State of New Jersey are dismissed with prejudice.

### 2. The Bergen County Prosecutor's Office

The Prosecutors Office is likewise not a person amenable to suit under § 1983. *See Gordon v. Berkeley Twp. Police*, No. 10–5061, 2011 WL 2580473, at *4 (D.N.J. June 27, 2011) (holding that a "Prosecutor's Office" is not a "person" within the meaning of a Section 1983 suit) (citations omitted); *Baker v. Lewis*, No. 10–3438, 2010 WL 4117140, at *1 n. 1 (D.N.J. Oct.19, 2010) (same) (citations omitted). Additionally, the Prosecutors Office is immune from suit under the Eleventh Amendment to the extent that it is an entity that could even potentially be sued under § 1983. *See Woodyard*, 514 Fed. App'x at 182.[5] As such, Plaintiff's suit against the Bergen County Prosecutor's Office is dismissed with prejudice.

---

[5] In determining whether immunity applies, a court examines: "(1) the source of the money that would pay for the judgment; (2) the status of the entity under state law; and (3) the entity's degree of autonomy." *Haybarger v. Lawrence Cnty. Adult Prob. & Parole*, 551 F.3d 193, 198 1978 (3d Cir. 2008).

### 3.   The Prosecutor Defendants are Immune

Plaintiff has sued four Bergen County Prosecutors – John Molinelli, Natalie Suarez Candella, Maria Rockfol, and James Donohue ("Prosecutor Defendants")–for their individual roles in prosecuting Plaintiff for the 2008 robbery.  The Prosecutor Defendants, however, are all immune from suit under § 1983 for conduct stemming from the prosecution of Plaintiff.  "[A] state prosecuting attorney who act[s] within the scope of his duties in initiating and pursuing a criminal prosecution" is not amenable to suit under § 1983. *Imbler v. Pachtman*, 424 U.S. 409, 410 (1976). *See also Kulwicki v. Dawson*, 969 F.2d 1454, 1465 (3d Cir. 1992); *Schrob v. Catterson*, 948 F.2d 1402, 1417 (3d Cir. 1991); *Schrob v. Catterson*, 948 F.2d 1402, 1417 (3d Cir. 1991); *Rose v. Bartle*, 871 F.2d 331, 345 and n. 12 (3d Cir. 1989).  Since *Imbler*, the Supreme Court has held that "absolute immunity applies when a prosecutor prepares to initiate a judicial proceeding, or appears in court to present evidence in support of a search warrant application." *Van de Kamp v. Goldstein*, 555 U.S. 335, 343 (2009) (citations omitted); *see also LeBlanc v. Stedman*, 483 F. App'x 666 (3d Cir. 2012).  "[A]cts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the [government], are entitled to the protections of absolute immunity." *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993).  Prosecutors also are absolutely immune from a civil suit for damages under § 1983 for: (1) instituting grand jury proceedings without proper investigation and without a good faith belief that any wrongdoing occurred, *Schrob*, 948 F.2d at 1411; *Rose v. Bartle*, supra; (2) initiating a prosecution without a good faith belief that any wrongdoing has occurred, *Kulwicki*, 969 F.2d at 1463-64; (3) soliciting false testimony from witnesses in grand jury proceedings, probable cause hearings, and trials, *Burns*, 500 U.S. at 490; *Kulwicki*, 969 F.2d at 1467; and (4) the knowing use of perjured testimony in a judicial proceeding, *Imbler*, 424 U.S. at 424-27; *Schrob*, 948 F.2d at 1417; *Brawer v. Horowitz*,

535 F.2d 830 (3d Cir. 1976).  "[A]bsolute immunity applies when a prosecutor prepares to

initiate a judicial proceeding, or appears in court to present evidence in support of a search

warrant application." *Van de Kamp v. Goldstein*, 555 U.S. 335, 343, 129 S.Ct. 855, 172 L.Ed.2d

706 (2009) (citations omitted) (further holding that a supervisory prosecutor is absolutely

immune for failing to adequately train and supervise district attorneys on the duty not to

withhold impeachment evidence and the failure to create any system for accessing information

pertaining to the benefits provided to jailhouse informants).  A falsely-charged defendant may be

"remedied by safeguards built into the judicial system," such as dismissal of the charges.

*Kulwicki*, 969 F.2d at 1464.

　　　　Here, Plaintiff alleges that the prosecutor Defendants, wrongfully pursued criminal

charges against him, failed to present exculpatory evidence and made other false statements to

the grand jury, tampered with witnesses, used false and misleading evidence to prosecute

Plaintiff, and engaged in myriad misconduct during the trial.  (*See generally* Am. Compl. 4-11.)

However, Plaintiff fails to allege facts that any of the prosecutor Defendants were acting outside

their official prosecutorial roles.  Thus, under well-settled law, the prosecutor defendants are

protected by immunity from a damages lawsuit for conduct during pre-trial and trial proceedings.

As such, the claims against the prosecutor Defendants are dismissed with prejudice.

### 4.  Westwood Police Department and Bergen County Sheriff's Department

　　　　The Westwood Police Department and Bergen County Sheriff's Department are also not

subject to suit under § 1983.  In New Jersey, a municipal police department is not an entity

separate from the municipality.  *See* N.J. Stat. Ann. § 40A: 14-118 (municipal police department

is "an executive and enforcement function of municipal government").  As such, the Westfield

Police Department and the Bergen County Sheriff's Department are not proper defendants in this

action.  *See Padilla v. Twp. of Cherry Hill*, 110 F. Appx. 272, 278 (3d Cir. 2004) ("In Section

1983 actions, police departments cannot be sued in conjunction with municipalities, because the police department is merely an administrative arm of the local municipality, and is not a separate judicial entity.") (quoting *DeBellis v. Kulp*, 166 F. Supp. 2d 255, 264 (E.D. Pa. 2001)); *Aycox v. City of Elizabeth*, 2009 U.S. Dist. LEXIS 111345, at *7 (D.N.J. Dec. 1, 2009) ("Because the Police Department is merely an arm of the Township, Plaintiff's claim against the department cannot stand."); *Godley v. Newark Police Dep't*, 2007 U.S. Dist. LEXIS 5718, at *8 (D.N.J. Jan. 26, 2007) (same).

As a court in this District recently explained:

> A New Jersey police department is not an independent entity with the capacity to sue and be sued, but only "an executive and enforcement function of municipal government." N.J.S.A. 40A:14–118. The case law under Section 1983 uniformly holds that the proper defendant is therefore the municipality itself, not the police department. *See Jackson v. City of Erie Police Dep't*, 570 F. App'x 112, 114 (3d Cir. 2014) (per curiam; not precedential) ("We further agree with the District Court that the police department was not a proper party to this action. Although local governmental units may constitute 'persons' against whom suit may be lodged under 42 U.S.C. § 1983, a city police department is a governmental sub-unit that is not distinct from the municipality of which it is a part.") (citation omitted). *See also Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 25 n. 4 (3d Cir. 1997) (Court "treat[s] the municipality and its police department as a single entity for purposes of section 1983 liability"); *Michaels v. State of New Jersey*, 955 F. Supp. 315, 329 n. 1 (D.N.J. 1996).

*Rivera v. Zwiegle*, No. 13–3024, 2014 WL 6991954, at *3 (D.N.J. Dec. 09, 2014). Here, Plaintiff has not sued municipalities themselves and cannot maintain his § 1983 claims against the Westwood Police Department or the Bergen County Sheriff's Department.

## 5. **The Honorable Donald R. Venezia**

Plaintiff has also sued the Judge that presided over his robbery trial. Plaintiff's claims against Judge Donald R. Venezia is based on his management of Plaintiff's case and legal rulings

during pretrial and trial proceedings. (Am. Compl. at 31-32.) Judges are absolutely immune

from liability in civil actions, including section 1983 actions, for their judicial acts. *Dennis v.*

*Sparks*, 449 U.S. 24, 27, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980). "Judicial immunity is an

immunity from suit, not just from ultimate assessment of damages." *Mireles v. Waco*, 502 U.S.

9, 11, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991). Both judges of general and limited jurisdiction,

including magisterial judges, are entitled to judicial immunity. See *Figueroa v. Blackburn*, 208

F.3d 435, 441 (3d Cir. 2000) (concluding that magisterial district judges, even though they

preside over courts of limited jurisdiction, are entitled to protections of judicial immunity).

There are only two circumstances in which a plaintiff can overcome judicial immunity:

"First, a judge is not immune from liability for nonjudicial actions, *i.e.*, actions not taken in the

judge's judicial capacity. Second, a judge is not immune for actions, though judicial in nature,

taken in the complete absence of all jurisdiction." *Mireles*, 502 U.S. at 11–12 (internal citations

omitted). In determining whether judicial immunity applies, the court "must decide whether the

Complaint set forth allegations that, taken as true, establish that the application of an exception

to the doctrine of absolute judicial immunity is above the speculative level." *Kirkland v. DiLeo*,

581 F. App'x 111, 114–15 (3d Cir. 2014) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555,

127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

Here, Plaintiff has presented no facts to suggest that he can overcome the bar of judicial

immunity, and, as such, his claims against Judge Venezia are dismissed with prejudice.

### 6. The Office of the Public Defender, Louis Acevado, and Gizzi

To the extent Plaintiff also asserts a Section 1983 claim for monetary damages against the

Public Defender's Office or its attorneys arising from their roles as defense counsel, his claim

fails because it lacks an essential element of a claim under 42 U.S.C. § 1983 – action under

14

color of State law. "A defense attorney 'does not act under color of state law when performing a lawyer's traditional functions as counsel in a criminal proceeding.'" *Xenos v. Slojund*, 424 F. App'x 80, 81 (3d Cir. 2011) (per curiam) (citing *Polk Cnty. v. Dodson*, 454 U.S. 312, 325, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981)); *see also Vermont v. Brillon*, 556 U.S. 81, 91, 129 S.Ct. 1283, 173 L.Ed.2d 231 (2009) ("Unlike a prosecutor or the court, assigned counsel ordinarily is not considered a state actor"); *Calhoun v. Young*, 288 F. App'x 47, 49 (3d Cir. 2008) (public defender representing criminal defendant is not acting under color of state law); *see also Gause v. Haile*, 559 F. App'x 196, 198 (3d Cir. 2014); *Nelson v. Hughes*, No. 07–5756, 2008 WL 5046767, at * 3 (D.N.J. Nov. 20, 2008) (public defender appointed to represent plaintiff in his civil commitment hearing was not acting "under color of state law" for purposes of Section 1983)). Furthermore, the Public Defender's Office is not a "person" as defined under § 1983 and thus, cannot be sued under that statute. *Will*, 491 U.S.at 71.

To the extent Plaintiff's allegations concern the traditional functions of a defense attorney, the public defender Defendants were not acting under color of state law and the Amended Complaint fails to state a claim under 42 U.S.C. § 1983. The Public Defender's Office is dismissed with prejudice because it is not a person subject to suit under § 1983.[6]

---

[6] Plaintiff's allegations regarding Defendant Louis Acevedo and James Gizzi are particularly convoluted and thus difficult to construe. Among the types of conduct alleged are claims that Acevedo violated his Sixth Amendment right to counsel by (1) attempting to force Plaintiff to sign a contract to pay for the legal services rendered by the Public Defender and (2) reporting him to various credit agencies. He similarly contends that Defendant James Gizzi attempted to force Plaintiff to sign an agreement to pay for the legal services rendered to him. In this regard, the Court notes that New Jersey Public Defender Act includes reimbursement and lien provisions. *See* N.J.S.A. 2A:158A-16, 158A-17. These provisions have been deemed valid under state law. *See Stroinski v. Office of Public Defender*, 134 N.J. Super. 21 (App. Div. 1975). The provisions provide that if a defendant has the means to pay for services, he shall be required to reimburse the Public Defender's Office in such amounts as he may reasonably be expected to pay. The provisions also note that a defendant's ability to pay would have no effect on the rendering of services. *See Calhoun v. Young*, No. 07-3691, 2007 WL 2462621, at *1 fn1 (D.N.J.

### 7.  Trial Witnesses have absolute Immunity from Claims Based on their Testimony

Most of Plaintiff's allegations of wrongdoing center on allegedly false or coerced testimony offered by witnesses at pretrial and trial proceedings.  A trial witness, including a police officer, sued under § 1983 has absolute immunity with respect to any claim based on the witness's testimony. *Briscoe v. LaHue*, 460 U.S. 325, 326 (1983).  Without this rule, witnesses would be reluctant to testify and "might be inclined to "shade [their] testimony in favor of the potential plaintiff [for] fear of subsequent liability." *Id.* at 332–33.  The *Briscoe* rule applies both at the trial and pre-trial stages of litigation. *See Rehberg v. Paulk*, 132 S.Ct. 1497, 1505, 182 L.Ed.2d 593 (2012) (grand jury proceedings).

Here, Plaintiff broadly alleges that his constitutional rights were violated by the presentation of fabricated evidence through perjured and coerced testimony.  In *Briscoe*, the plaintiffs were each convicted based upon the alleged perjured testimony of the defendant police officers and, later, brought § 1983 claims against the officers based upon their perjured testimony. 460 U.S. at 326–27. The Supreme Court found that subjecting government officials, such as police officers, to liability under § 1983 for their testimony might undermine not only their contribution to the judicial process but also the effective performance of their other public duties, *Briscoe*, 460 U.S. at 343, and held that testifying police officers could not be held liable under § 1983 for claims premised upon their alleged perjured testimony. *Id.* at 326; *Peteete v. Asbury Park Police Department*, F. App'x. 887, 889 (3d Cir. 2012) (affirming dismissal of § 1983 claim against police detective based upon perjured testimony because the claim was barred by absolute immunity); *Harper v. Pennsylvania*, 2013 WL 4718952, *2 (E.D. Pa. Sept.3, 2013)

---

Aug. 27, 2007) (explaining same).  I consider Plaintiff's conspiracy claims against these Defendants in section E(1)(f).

(dismissing § 1983 claims against police officer based upon perjured testimony because claims were subject to absolute immunity).

Here, to the extent Plaintiff states claims against any remaining witness Defendants, these Defendants have absolute immunity for any claims based upon their testimony during grand jury and trial proceedings. This includes the police officer defendants and private parties that testified against Plaintiff at trial. Notably, the claims against Defendants Betty Mastariggo and Jennifer Rose Rothenhausen appear to be premised entirely on their allegedly false trial testimony, and as such, the claims against Defendants Mastariggo and Rothenhausen are dismissed.

### E. Timeliness of Plaintiff's Section 1983 and State Law Claims

Because it is apparent on the face of Plaintiff's Amended Complaint that Plaintiff's claims arise out of events that occurred in 2008 or earlier, the Court next addresses the statute of limitations and finds that Plaintiff's claims that clearly accrued prior to February 18, 2012 are time barred. "Although the running of the statute of limitations is ordinarily an affirmative defense,[7] where that defense is obvious from the face of the complaint and no development of the record is necessary, a court may dismiss a time-barred complaint *sua sponte* under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim." *Ostuni v. Wa Wa's Mart*, 532 F. App'x 110, 112 (3d Cir. 2013) (citing *Fogle v. Peirson*, 435 F.3d 1252, 1258 (10th Cir. 2006)); *Hunterson v. Disabato*, 244 F. App'x 455, 457 (3d Cir. 2007) (per curiam).

---

[7] The statute of limitations is an affirmative defense that generally must be raised by the defendant, and it is waived if not properly raised. *See Benak ex rel. Alliance Premier Growth Fund v. Alliance Capital Mgmt. LP.*, 435 F.3d 396, 400 n. 14 (3d Cir. 2006); *Fassett v. Delta Kappa Epsilon*, 807 F.2d 1150, 1167 (3d Cir. 1986).

### 1. Plaintiff's Section 1983 Claims

"To state a claim under § 1983, a plaintiff must show that the defendant, through conduct sanctioned under the color of state law, deprived [him or] her of a federal constitutional or statutory right." *Gruenke v. Seip*, 225 F.3d 290, 298 (3d Cir. 2000).  The Court construes Plaintiff's Amended Complaint to allege Fourth Amendment claims for false arrest, false imprisonment, malicious prosecution, and conspiracy arising from the 2008 robbery charges. The Court additionally construes Plaintiff's Amended Complaint to allege Fourteenth Amendment conditions of confinement claims arising out of his detention in connection with the 2008 robbery, Fourth Amendment Claims of unlawful search and seizure related to the search of his residence and theft of his property in 2009, and a *Monell* claim.[8]

The state statute of limitations for personal injury actions applies to all Section 1983 claims. *Wilson v. Garcia*, 471 U.S. 261, 280 (1985).  In New Jersey, the applicable statute of limitations period is two years. *Cito v. Bridgewater Twp. Police Dept.,* 892 F.2d 23, 25 (3d Cir. 1989); *see* N.J.S.A. 2A:14-2 (New Jersey statute of limitations of 2 years for "actions for injury to persons by wrongful action,").  Although the statute of limitations period is borrowed from the law of the forum state, federal law governs the accrual of such an action. *Wiltz v. Middlesex County Office of Prosecutor*, 2006 WL 1966654, at *4 (D.N.J. Jul. 12, 2006) (citations omitted). Under federal law, a Section 1983 cause of action begins to accrue when the plaintiff knows, or has reason to know, of the injury on which the action is based. *Mullen v. Port Authority of New York and New Jersey*, 100 F.Supp.2d 249, 260 (D.N.J. 1999) (citing *Montgomery v. DeSimone*,

---

[8] Given the convoluted and voluminous nature of Plaintiff's Amended Complaint, it is difficult to construe Plaintiff's claims.  For that reason, the Court addresses only those federal claims apparent from the face of the Amended Complaint. To the extent that Plaintiff intended to bring claims not addressed in this Opinion, including state-law claims, the Plaintiff may do so, in a clear and specific fashion, in an amended complaint.

159 F.3d 120, 126 (3d Cir. 1998)); *see also Deary v. Three Un-Named Police Officers*, 746 F.2d 185, 193 (3d Cir. 1984).

### a. False Arrest and False Imprisonment

Plaintiff's claims for false arrest and imprisonment arising from the 2008 robbery are time-barred. "To state a claim for false arrest under the Fourth Amendment, a plaintiff must establish: (1) that there was an arrest; and (2) that the arrest was made without probable cause." *James v. City of Wilkes–Barre*, 700 F.3d 675, 680 (3d Cir. 2012). For claims of unlawful arrest, the "statute begins to run at the time the claimant becomes detained pursuant to legal process." *Wallace v. Kato* 549 U.S. 384, 397 (2007); *Dique v. New Jersey State Police*, 603 F.3d 181, 188 (3d Cir. 2010). A claim of false arrest, and the accompanying claim for false imprisonment, begins to accrue immediately upon the arrest at issue. *Wallace v. Kato*, 549 U.S. 384, 389–90 & n. 3, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007); *Singleton v. DA Philadelphia*, 411 F. App'x 470, 472 (3d Cir. 2011) (ruling that accrual of a claim for false arrest occurred on the date that the plaintiff "was arrested and charges were filed against him"); *Alexander v. Fletcher*, 367 F. App'x 289, 290–91 (3d Cir. 2010) (affirming the district court's conclusion that a § 1983 false arrest claim began to accrue on the date of arrest). Nevertheless, while the claim accrues upon arrest, the statute of limitations does not begin to run at the same time. Instead, the statute of limitations for a false arrest/imprisonment claim begins to run "when the individual is released, or becomes held pursuant to legal process," i.e., is arraigned. *Alexander v. Fletcher*, 367 F. App'x at 290 n. 2 (citing *Wallace*, 549 U.S. at 389-90). Here, Plaintiff's § 1983 claims premised on his false arrest and/or false imprisonment arising out of his 2008 arrest for robbery are barred because they accrued, at the latest, at the time he was arraigned on the robbery charges, which was more than two years before he brought the instant complaint.

19

### b.  Conspiracy to Falsely Arrest and Imprison Plaintiff

"To demonstrate a conspiracy under § 1983, a plaintiff must show that two or more conspirators reached an agreement to deprive him or her of a constitutional right 'under color of law.'" *Parkway Garage, Inc. v. City of Phila.*, 5 F.3d 685, 700 (3d Cir. 1993), *abrogated on other grounds by United Artists Theatre Circuit, Inc. v. Twp. of Warrington*, 316 F.3d 392 (3d Cir. 2003).  Plaintiff's allegations of conspiracy, however, do not preserve claims that are otherwise time barred, because a civil conspiracy cause of action accrues at the time of each overt act challenged.  *See Wells v. Rockefeller*, 728 F.2d 209, 217 (3d Cir. 1984); *Cf. Sandutch v. Muroski*, 684 F.2d 252, 254 (3d Cir. 1982) (per curiam) (with regard to a claim alleging a conspiracy to secure false testimony, contemporaneous knowledge of false testimony led to accrual of cause of action, even if the plaintiff "may not have known all the facts necessary" to establish a conspiracy).  Thus, to the extent that the Plaintiff wishes to "revive time-barred injuries" through allegations of conspiracy, he may not do so.  *Wells*, 728 F.2d at 217; *see also Graff v. Kohlman*, 28 F. App'x 151, 154 (3d Cir. 2002) (rejecting the contention that later conduct "establishe[d] a 'continuing conspiracy' against [the plaintiff] that makes his April 4, 1999 filing timely" for harms dating from 1992 and 1993).  As such, conspiracy claims arising from his false arrest and imprisonment in 2008 are dismissed as time-barred.[9]

### c.  Conditions of Confinement Claims Arising from Detentions in 2008

Plaintiff alleges a number of violations arising out of his pretrial detention in connection with the 2008 robbery.  "The Constitution mandates that prison officials satisfy inmates' 'basic human needs – e.g., food, clothing, shelter, medical care, and reasonable safety.'" *Duran v.*

---

[9] The Court discusses Plaintiff's conspiracy claim relating to his claim for malicious prosecution in the next section below.

*Merline*, 923 F.Supp.2d 702, 719 (D.N.J. 2013) (quoting *Helling v. McKinney*, 509 U.S. 25, 32,

113 S.Ct. 2475, 125 L.Ed.2d 22 (1993)) (citation omitted).  As he was a pretrial detainee at the

time of the challenged actions, Plaintiff's condition of confinement claims are analyzed under the

Fourteenth Amendment as opposed to the Eighth Amendment.  *See Hubbard v. Taylor*, 538 F.3d

229, 231 (3d Cir. 2008) (explaining that due process clause of the Fourteenth Amendment

prohibits prison officials from imposing conditions that amount to punishment of a pretrial

detainee.).  Whether analyzed through the Eighth or Fourteenth Amendment, Plaintiff's claims

accrued when Plaintiff knew or had reason to know, of the injury on which the action is based.

*See Mullen v. Port Authority of N.Y. and N.J.*, 100 F.Supp.2d, 249, 260 (D.N.J. 1999) (citing

*Montgomery v. DeSimone*, 159 F.3d 120, 126 (3d Cir. 1998)). As such, the limitations period on

each of those claims began to run at the time Plaintiff was allegedly mistreated.  As such all

claims arising from his alleged mistreatment by the Westwood Police and Bergen County

Sheriffs in 2008 (*see* Am. Compl. at 53-54) are likewise barred by the statute of limitations.

### d.  Destruction and Theft of Plaintiff's Property Occurring in 2009

Plaintiff's claims arising from the 2009 search of his residence are similarly time barred.

With respect to claims of unlawful search and seizure, "courts will generally find that the

plaintiff knew of the injury, and thus the cause of action accrued, on the day the search and/or

seizure took place." *MacNamara v. Hess*, 67 F. App'x 139, 143 (3d Cir. 2003) (noting that the

plaintiff was present on the date of the search and who did not contend that he did not have

contemporaneous knowledge of the search).  Likewise, the continuing unlawful possession of a

Plaintiff's property does not amount to a continuing violation but rather is a consequence of the

original unlawful seizure.  *Id.*  Here, it is unclear whether Plaintiff was present when his home

was unlawfully searched, but he does not allege otherwise or contend that he only became aware

of the search on after February 18, 2012 – two years prior to the filing of his complaint here. As such, Plaintiff's claims that members of the Bergen County Sheriff's Department unlawfully searched his home in 2009 and damaged and stole his property during that search (see Am. Compl. at 54) are likewise barred by the statute of limitations.

      e.  **Potential <u>Monell</u> Claim**

To the extent Plaintiff has attempted to allege a *Monell* claim, that claim would also be time-barred. "[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990). Instead, it is when "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" that the government as an entity is responsible under § 1983. *Id* (citations omitted). "A government policy or custom can be established in two ways. Policy is made when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict." *Andrews*, 895 F.2d at 1480 (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986)). "A course of conduct is considered to be a 'custom' when, though not authorized by law, 'such practices of state officials [are] so permanent and well settled' as to virtually constitute law." *Andrews*, 895 F.2d at 1480 (quoting *Monell*, 436 U.S. at 690).

Even if Plaintiff had sufficiently alleged a *Monell* claim (which he has not), that claim is based on events that occurred in 2002 through 2008, and is thus barred by the applicable two-year statute of limitations.

### f.  Malicious Prosecution and Conspiracy to Maliciously Prosecute

The Court next addresses Plaintiff's claims for malicious prosecution and conspiracy to maliciously prosecute Plaintiff.  Unlike the claims described above, the statute of limitations for a malicious prosecution claim under Section 1983 accrues on the day that the criminal proceedings against a plaintiff are terminated in his or her favor. [10] *Torres v. McLaughlin*, 163 F.3d 169, 177 (3d Cir. 1998); *see also Kossler v. Crisanti*, 564 F.3d 181, 186–87 (3d Cir. 2009); *see also Ginter v. Skahill*, 298 F. App'x. 161, 163 (3d Cir. 2008) ("When false arrest is the basis of the § 1983 action, the statute of limitations normally begins to run at the time of arrest. Claims alleging malicious prosecution do not accrue until charges are dismissed.")(citing *Montgomery v. DeSimone*, 159 F.3d 120, 126 (3d Cir. 1998) and *Smith v. Holtz*, 87 F.3d 108, 111 (3d Cir. 1996)) (internal quotations omitted).  As such, Plaintiff's claim for malicious prosecution did not accrue until he was acquitted, which, according to his Amended Complaint, occurred on or about March 27, 2012.

Plaintiff's conspiracy claim arising from his alleged malicious prosecution is likewise not untimely because like the § 1983 claim for malicious prosecution, the conspiracy claim did not accrue until the prosecutions were terminated. *See Rose v. Bartle*, 871 F.2d 331, 352 (3d Cir. 1989) ("it is difficult to see how a cause of action for conspiracy to prosecute maliciously could have accrued before that date" the malicious prosecution claim accrued); *see also Wiltz v.*

---

[10] The Court notes that Plaintiff's Complaint does not state facts suggesting that the continuing violations doctrine is applicable to any of Plaintiff's time-barred claims.  The continuing violations doctrine is an equitable exception to a strict application of a statute of limitations where the conduct complained of consists of a pattern that has only become cognizable as illegal over time.  *Foster v. Morris*, 208 F. App'x 174 (3d Cir. 2006) (citing *Cowell v. Palmer Twp.*, 263 F.3d 286, 292 (3d Cir. 2001)).  "[C]auses of action that can be brought individually expire with the applicable limitations period." *Livingston ex rel. Livingston v. Borough of McKees Rocks*, 223 F. App'x 84 (3rd Cir. 2007) (citing *O'Connor v. City of Newark*, 440 F.3d 125, 128 (3d Cir. 2006)).

*Middlesex Cnty. Office*, 249 F. Appx. 944, 949 (3d Cir. 2007). The Court therefore treats Plaintiff's malicious prosecution and conspiracy to maliciously prosecute claims as timely for purposes of *sua sponte* screening and next assesses whether Plaintiff has stated a claim for relief against any of the remaining Defendants.

A claim for malicious prosecution in violation of the Fourth Amendment has the following elements: "(1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." *DiBella v. Borough of Beachwood*, 407 F.3d 599, 601 (3d Cir. 2005) (citing *Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003)).[11] Each element is to be examined separately and care must be taken not to conflate the distinct showing and separate interests that are served by these separate requirements. *Kossler v. Crisanti*, 564 F.3d 181, 194 (3d Cir. 2009) (*en banc*).

Plaintiff must plead sufficient facts to create a plausible showing that the elements of the claim are present and permit a reasonable expectation that discovery will generate evidence to support each element. *See Kossler*, 564 F.3d at 186–87 (presenting a Fourth Amendment malicious prosecution claim to a jury requires sufficient evidence to support each of the five elements); *Gieman v. State Farm Mutual Auto Ins. Co.*, 583 F.3d 187, 190 (3d Cir. 2009) (to survive a motion to dismiss "a complaint must contain sufficient factual matter, accepted as true,

---

[11] Malicious prosecution claims brought under § 1983 can be based upon either the Fourth Amendment or the Fourteenth Amendment procedural due process clause, but not under the Fourteenth Amendment substantive due process clause. *See Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 792 (3d Cir. 2000).

to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). The preferred approach is to consider each element in sequential order; if the claim fails at any step, consideration of the remaining elements is unnecessary. *Kossler*, 564 F.3d at 186–87.

Although prosecutors typically initiate proceedings against criminal defendants, liability for malicious prosecution can also attach when "[a] defendant influences a third party to initiate the proceedings." *Bristow v. Clevenger*, 80 F.Supp.2d 421, 432 (M.D. Pa. 2000) (citing *Gilbert v. Feld*, 788 F. Supp. 854, 861 (E.D. Pa.1992)). Notably, a law enforcement officer may be liable for malicious prosecution where he "influenced or participated in the decision to institute criminal proceedings." *Halsey v. Pfeiffer*, 750 F.3d 273, 297 (3d Cir. 2014) (citing *Sykes v. Anderson*, 625 F.3d 294, 308–09, 317 (6th Cir.2010)); *accord Henderson v. City of Philadelphia*, 853 F.Supp.2d 514, 518 (E.D. Pa. 2012) ( "Although prosecutors rather than police officers are generally responsible for initiating criminal proceedings, an officer may ... be considered to have initiated a criminal proceeding if he or she knowingly provided false information to the prosecutor or otherwise interfered with the prosecutor's informed discretion.") (citing *Brockington v. City of Philadelphia*, 354 F.Supp.2d 563, 569 (E.D. Pa. 2005)). As the Third Circuit recently reiterated, "[i]t is settled law that 'officers who conceal and misrepresent material facts to the district attorney are not insulated from a § 1983 claim for malicious prosecution simply because the prosecutor [and] grand jury . . . act independently to facilitate erroneous convictions." *Halsey*, F.3d at 297 (citing *Pierce v. Gilchrist*, 359 F.3d 1279, 1292 (10th Cir.2004), *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997), and *Jones v. City of Chicago*, 856 F.2d 985, 994 (7th Cir. 1988)).

After construing the allegations in the Amended Complaint in the light most favorable to Plaintiff and relying on the recent guidance provided by the Third Circuit in *Halsey*, Plaintiff's malicious prosecution claim against Detective James Mc Morrow, Officer Michael Pontillo, Detective Robert Saul, Jr., Robert DelCorpo, Sergeant John Murphy, and Karen Eramo shall proceed past the *sua sponte* dismissal stage. Plaintiff has not, however, adequately alleged a malicious prosecution claim against Police Chief Frank Regina, Officer Robert Held, Sargent Gerard Fortunat, or Sergeant Hucheson. Likewise, Plaintiff has not pleaded any facts indicating that Defendants David George Potter, Betty Mastariggo, Jennifer Rose Rothenhousen, all of whom are private citizens, influenced or participated in the decision to institute proceedings against Plaintiff. To the extent these individual Defendants are not immune from suit as trial witnesses, Plaintiff has failed to plead facts that could render any of them liable for malicious prosecution. Nor has Plaintiff pleaded any facts showing that Joshua Buckner, the law firm of Sunshine, Atkins, Minassian, Tafuri, & D'Amato, Louis Acevado or James Gizzi had any role in initiating a criminal proceeding against Plaintiff. Plaintiff's malicious prosecution claim is dismissed without prejudice as to all these Defendants.

The Court next analyzes Plaintiff's conspiracy brought in connection with his claim of malicious prosecution. As stated above, for a plaintiff to establish a proper § 1983 civil conspiracy claim, he or she must allege that "persons acting under color of state law conspired to deprive him of a federally protected right." *Perano v. Twp. Of Tilden*, 423 F. App'x. 234 (3d Cir. 2011). Just as with § 1985(3) claims, a conspiracy claim under § 1983 requires a "meeting of the minds," and to survive a motion to dismiss, plaintiffs must provide some factual basis to support the existence of the elements of a conspiracy, namely, agreement and concerted action. *Startzell v. City of Philadelphia*, 533 F.3d 183, 205 (3d Cir. 2008) (quoting *Adickes v. S.H. Kress*

26

*& Co.*, 398 U.S. 144, 158, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)); *Capogrosso*, 588 F.3d at 185.

"[T]he bare allegation of an agreement is insufficient to sustain a conspiracy claim." *Brown v.*

*Deparlos*, 492 F. App'x 211, 215 (3d Cir. 2012) (per curiam) (citing *Abbott v. Latshaw*, 164 F.3d

141, 148 (3d Cir. 1998)); *see also Young v. Kann*, 926 F.2d 1396, 1405 n. 16 (3d Cir. 1991)

(affirming the dismissal of "conspiracy claims [that] do not appear to be based in fact, but merely

upon ... own suspicion and speculation"). It is insufficient to allege that "the end result of the

parties' independent conduct caused plaintiff harm or even that the alleged perpetrators of the

harm acted in conscious parallelism." *Novellino v. N.J. Dep't of Corr. Mountainview Youth*,

2011 U.S. Dist. LEXIS 85209, 2011 WL 3418201 (D.N.J. Aug. 3, 2011), *15 (citing *Spencer v.*

*Steinman*, 968 F. Supp. 1011, 1020 (E.D. Pa. 1997)).

   The Supreme Court has held that so long as the requirement of state action is otherwise

satisfied, private parties involved in conspiracies to violate someone's constitutional rights may

be held liable for conspiracy:

> [A] private party involved in such a conspiracy, even though not an
> official of the State, can be liable under [Section] 1983. Private
> persons, jointly engaged with state officials in the prohibited
> action, are acting 'under color' of law for purposes of the statute.
> To act 'under color' of law does not require that the accused be an
> officer of the State. It is enough that he is a willful participant in
> joint activity with the State or its agents[.]

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) (holding

that the defendant restaurant could be charged with acting under color of state law if the

defendant had an "understanding" with a city policeman to deny plaintiff service or to cause

plaintiff's subsequent arrest due to her association with black people) (internal citations and

quotation marks omitted); *see also Dennis v. Sparks*, 449 U.S. 24, 27–28, 101 S.Ct. 183, 186, 66

L.Ed.2d 185 (1980) (private party linked to judge in corrupt conspiracy a state actor); *Kach v.*

*Hose*, 589 F.3d 626, 646 (3d Cir. 2009) (noting that "private party [who] has acted with the help of or in concert with state officials" may be treated at state actor) ]. Thus, under the conspiracy theory, a private party may be liable under 42 U.S.C. § 1983 if he was acting "in concert" with public officials. Further, the requisite state action may be found even if the state actor with whom the private individual allegedly conspired is himself immune from suit. *See Dennis*, 449 U.S. 24, 27-29. Likewise "[P]ublic defenders are not immune from § 1983 liability when they conspire with state officials to deprive their client of federal rights." *Figueroa v. Clark*, 810 F.Supp. 613, 616 (E.D. Pa. 1992); *Tower v. Glover*, 467 U.S. 914, 104 S.Ct. 2820, 81 L.Ed.2d 758 (1984).

Here, Plaintiff make numerous conclusory statements about a large-scale "conspiracy" to maliciously prosecute him for the 2008 robbery and has described the independent conduct of the individual Defendants, but he has not sufficiently pleaded the elements of agreement and concerted action. As the Supreme Court explained in *Twombly*, 550 U.S. at 556, "terms like 'conspiracy,' or even 'agreement,' are border-line: they might well be sufficient in conjunction with a more specific allegation – for example, identifying a written agreement or even a basis for inferring a tacit agreement, . . . but a court is not required to accept such terms as a sufficient basis for a complaint." *Id.* at 557; *see also Albrecht v. Hamilton*, 233 F. App'x. 122, 124-25 (3d Cir. 2007)  In this case, Plaintiff's Amended Complaint does not set forth the required elements of agreement and concerted action and does not set forth a plausible basis for inferring such an agreement and is thus insufficient to state a claim. As such, the conspiracy claim in connection with Plaintiff's malicious prosecution claim is dismissed without prejudice, and Plaintiff may submit an amended Complaint to cure these deficiencies.

### g. Additional § 1983 Claims Arising from Plaintiff's 2012 Trial and Acquittal

Plaintiff additionally alleges that "[t]wo unknown Berger [sic] County sheriffs threatened my life 3-14-12 in the Hackensack Superior Court House in N.J." (See Am. Compl. at 53.) This threat allegedly occurred on the first day of trial. (*See id.* at 26.) Plaintiff contends that the sheriffs allegedly told him if he did not "plead guilty, we are going to kill you in the cell." (*Id.*) Plaintiff further alleges that one of the sheriffs told Plaintiff "not to voice constitutional issues." *Id.* at 53. After Plaintiff was acquitted on or around March 27, 2012, the sheriffs at the Bergen County jail punished Plaintiff for his acquittal by locking him and another man in their shared cell without running water or a working toilet for a week. (*Id.* at 24, 54.) The toilet backed up and, despite the unbearable smell, the sheriffs refused to permit Plaintiff or his cellmate to change cells or use the bathroom elsewhere. (*Id.* at 24.) For purposes of screening, the Court construes Plaintiff to allege claims for retaliation under § 1983 and finds that these claims survive screening. The Court also construes Plaintiff's post-acquittal allegation that he was locked in a his cell for a week without running water or a working toilet to state a Fourteenth Amendment conditions of confinement claim, and finds that that claim likewise survives screening.

## 2. Plaintiff's "Separate but Related" State-law Claims

### a. State Law Claims against his Retained Counsel

Plaintiff also alleges state law claims against Defendant Buckner and Buckner's law firm of Sunshine, Atkin, Minassian, Tafuri & D'Amato, P.A. Plaintiff Amended Complaint alleges that Buckner told Plaintiff's family that he was guilty of the 2008 robbery, breached his obligation of confidentiality on a number of occasions, refused to follow Plaintiff's directions, took on the representation of Plaintiff despite a conflict of interest and improperly sought to be

relieved as Plaintiff's counsel prior to trial, and depleted Plaintiff's retainer by overcharging Plaintiff for services rendered and performing unnecessary services (Pl. Am. Compl. at 33-35.) Plaintiff contends that this conduct amounted to breach of contract and violations of the rules of professional conduct.[12] (*See id.*)

Under New Jersey law, a breach of contract claim requires three elements: (1) the existence of a valid contract; (2) a breach of that contract; and (3) resulting damage to the plaintiff. *Ramada Worldwide, Inc. v. Kim*, Civ. 09–4534, 2010 WL 2879611, at *3 (D.N.J. July 15, 2010) (citing *AT & T Credit Corp. v. Zurich Data Corp.*, 37 F.Supp.2d 367, 370 (D.N.J. 1999)). Plaintiff has not sufficiently pleaded the claim for breach of contract. Although Plaintiff has described Buckner's conduct as a breach of his contract with Plaintiff, he does not adequately plead the existence of a valid contract, breach of the terms of that contract, or resulting damages.[13] As such, the claims against Defendant Buckner and Sunshine, Atkin, Minassian, Tafuri & D'Amato, P.A. are dismissed without prejudice, and Plaintiff may reassert that claim in an amended complaint.

Plaintiff's claims that Buckner violated the Rules of Professional Conduct do not, standing alone, give rise to an action in tort. *See Sommers v. McKinney*, 287 N.J. Super. 1, 13 (App. Div. 1996); *Baxt v. Liloia*, 155 N.J. 190, 197-98 (1998) (explaining that "purpose of the Model Rules [is] to regulate lawyer conduct through the disciplinary process, not to serve as a basis for civil liability.") (citing Legislative History of the Model Rules of Professional Conduct: Their Development in the ABA House of Delegates 20 (1987)). "[B]ecause the ethical standards

---

[12] Plaintiff contends that Buckner overcharged him and depleted Plaintiff's retainer for his own financial gain and in order to further the conspiracy. This Court has already determined that Plaintiff has not sufficiently alleged a meeting of the minds and concerted action and dismissed his conspiracy claims without prejudice.

set the minimum level of competency to be displayed for all attorneys, violation of the rules

constitute evidence of malpractice." *Sommers*, 287 N.J. Super. at 13 (citing *Albright v. Burns*,

206 N.J. Super. 625, 634 (App. Div. 1986)).

　　To the extent Plaintiff intends to state a claim for legal malpractice, however, his

Amended Complaint fails to provide a "short and plain statement of the claim showing that the

pleader is entitled to relief."   Fed. R. Civ. P. 8(a)(2).  Legal malpractice is a variation on the tort

of negligence.  *McGrogan v. Till*, 167 N.J. 414, 425 (2001).  In order to establish a claim of legal

malpractice, a plaintiff must demonstrate: (1) the existence of an attorney-client relationship

creating a duty of care upon the attorney; (2) that the attorney breached the duty owed; (3) that

the breach was the proximate cause of any damages sustained; and (4) that actual damages were

incurred.  *Sommers v. McKinney*, 287 N.J. Super. 1, 9-10 (App. Div. 1996); *see also Albright v.*

*Burns*, 206 N.J. Super. 625, 632 (App. Div. 1986).

　　Ordinarily, the measure of damages is what result the client would have obtained in the

absence of attorney negligence.  *2175 Lemoine Ave. Corp v. Finco Inc.*, 272 N.J. Super. 478, 488

(1994); *see also  Garcia v. Kozlov, Seaton, Romanini & Brooks, P.C.*, 179 N.J. 343, 358, 845

A.2d 602 (2004); *Froom v. Perel*, 377 N.J. Super. 298, 315, 872 A.2d 1067 (App. Div.), *certif.*

*denied*, 185 N.J. 267, 883 A.2d 1063 (2005).  To state a claim for relief against Buckner and his

lawfirm, Plaintiff, who was acquitted of the charges at trial, must provide some facts showing

that (1) the violations of the rules of professional conduct were the proximate cause of his

damages and that (2) actual damages were incurred.[14]  To the extent Plaintiff wishes to allege a

---

[14] In this regard, the Court notes that emotional distress damages are generally unavailable in a
legal malpractice action absent "egregious" and "extraordinary" circumstances.  *Innes v.*
*Marzano-Lesnevich*, 435 N.J. Super. 198, 232 (App. Div. 2014) (citing *Gautam v. De Luca*, 215
N.J. Super. 388, 399 (App. Div. 1987) ("emotional distress damages should not be awarded in
legal malpractice cases at least in the absence of egregious or extraordinary circumstances....

state-law claim for malpractice, he may submit an amended complaint that comports with Fed.

R. Civ. P. 8(a)(2).

### b.  Defamation Claim against Darri E. Dewitt

On November 6, 2014, Plaintiff submitted an application to the Court to clarify that he

intended to name Bergen County Sheriff Darri E. Dewitt as a defendant in his case.  (No. 13.)

The claim against Defendant Dewitt sounds in defamation and occurred in 2013.

Rule 20 of the Federal Rules of Civil Procedure governs the joinder of defendants, while

Rule 18 governs the joinder of claims.  *See* Fed. R. Civ. P. 18(a), 20(a)(2).  Specifically, Rule 20

provides that "[p]ersons ... may be joined in one action as defendants if ... any right to relief is ...

arising out of the same transaction, occurrence, or series of transactions." Fed. R. Civ. P.

20(a)(2)(A).  Rule 18, in turn, provides that "[a] party asserting a claim ... may join ... as many

claims as it has against an opposing party," Fed. R. Civ. P. 18(a).  Where multiple defendants are

named, the analysis under Rule 20 precedes that under Rule 18.  *See* Charles Allen Wright,

Arthur R. Miller, Mary Kay Kane, Federal Practice and Procedure Civil 3d § 1655; *see also*

*United States v. Mississippi*, 380 U.S. 128, 143, 85 S.Ct. 808, 13 L.Ed.2d 717 (1965); *Ross v.*

*Meagan*, 638 F.2d 646, 650 n. 5 (3d Cir. 1981), overruled on other grounds by, *Neitzke v.*

*Williams*, 490 U.S. 319, 328, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989) (joinder of defendants is

not permitted by Rule 20 unless both commonality and same transaction requirements are

satisfied).  Consequently, a civil plaintiff may not name more than one defendant in his original

or even amended complaint unless one claim against each additional defendant is transactionally

---

[D]amages should be generally limited to recompensing the injured party for his economic
loss.")); *see also Winstock v. Galasso*, 430 N.J. Super. 391 (App. Div.), *certif. denied*, 215 N.J.
487, 73 A.3d 513 (2013).

related to the claim against the first defendant and involves a common question of law or fact. *See* Fed. R. Civ. P. 20(a)(2); *DeAsencio v. Tyson Foods*, 342 F.3d 301, 307-08 (3d Cir. 2003) ("a district court may exercise supplemental jurisdiction where state-law claims share 'a common nucleus of operative fact' with the claims that supported the district court's original jurisdiction") (citations omitted). Prisoners are not exempt from these requirements. *See George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) ("A [scatter]shot complaint that would be rejected if filed by a free person ... should be rejected if filed by a prisoner").

The Court declines to exercise supplemental jurisdiction over Plaintiff's state law defamation claim against Darri E. Dewitt because it does not meet the commonality and same transaction requirements. Because the Court declines to exercise supplemental jurisdiction over Plaintiff's defamation claim, that claim is dismissed and Plaintiff's application for clarification (No. 13) is denied as moot. To the extent Plaintiff has omitted facts showing the relation between this claim and his federal claims, he may submit an amended complaint.

## IV.  CONCLUSION

As described in the foregoing Opinion, Plaintiff's application to proceed *in forma pauperis* (No. 11) and for refund of the filing fee (No. 12) are granted and his Amended Complaint is dismissed in part. The Complaint is dismissed with prejudice as to the State of New Jersey, the Bergen County Prosecutor's Office, Prosecutor John Molinelli, Assistant Prosecutor Natalie Suarez Canella, Assistant Prosecutor Maria Rockfol, Prosecutor James Donohue, the Westwood Police Department, the Bergen County Sheriff's Department, The Honorable Donald R. Venezia, J.S.C., and the Office of the Public Defender. The Court also dismisses all time-barred claims as described herein. Plaintiff's malicious prosecution claim against Detective James Mc Morrow, Officer Michael Pontillo, Detective Robert Saul, Jr., Robert DelCorpo, Sergeant John Murphy, and Karen Eramo shall proceed past the *sua sponte*

dismissal stage.  Plaintiff's retaliation claim and Fourteenth Amendment conditions of confinement claims against the unidentified Bergen County Sheriff's Office arising from his 2012 trial and acquittal and as described in Section III. E(1)(g) of this opinion also proceed at this time.

The remaining claims and Defendants are dismissed without prejudice, and Plaintiff is granted leave to file an amended complaint to cure the deficiencies as described herein.[15] Finally, Plaintiff's application for clarification as to the status of Defendant Darri. W. Dewitt (No. 13), and his application for default judgment (No. 14) are denied.  An appropriate Order follows.

Madeline Cox Arleo, District Judge
United States District Court

Date: _____, 2015

---

[15] The Court again reminds Plaintiff that in amending his complaint he must comply with the mandate of Rule 8, which requires a "short plain statement" of his claims, *see* Fed. R. Civ. P. 8(2)(b), or risk dismissal.